## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

ROSS GOOD, individually and on behalf of a
class,

|                                    |                          |
|------------------------------------|--------------------------|
| Plaintiff,                         |                          |
| v.                                 | No. 10-CV-01662 JRT-JJG  |
| U. S. BANK, NATIONAL ASSOCIATION,  |                          |
| Defendant.                         |                          |

### FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff, ROSS GOOD, ("Plaintiff"), brings this action on behalf of himself and all other persons similarly situated, through his attorneys, and except as to those allegations pertaining to Plaintiff or his attorneys, which allegations are based upon personal knowledge, alleges the following upon information and belief against Defendant, U. S. BANK, NATIONAL ASSOCIATION.

### PRELIMINARY STATEMENT

1.      Plaintiff brings this action to secure redress for himself and others similarly situated for violations by U. S. BANK, NATIONAL ASSOCIATION ("Defendant") of the Fair and Accurate Transactions Act of 2003 ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA").

2.      Specifically, Plaintiff alleges that, on credit or debit card receipts provided at the point of sale or transaction, Defendant printed the card's expiration date.

3.      One provision of FACTA, codified as 15 U.S.C. § 1681c(g), provides in relevant part: "No person that accepts credit cards or debit cards for the transaction of business shall print … the expiration date upon any receipt provided to the cardholder at the point of sale or

transaction."

4.      The purpose of this "truncation requirement" is to prevent identity theft.  The Federal Trade Commission estimates that over 9 million persons each year have their identities assumed by criminals for financial gain, causing losses in excess of $50 billion.

5.      One common method identity thieves use is to obtain credit card receipts that are stolen, lost, or discarded and use the information on them to engage in transactions.  Identity thieves who do this are known as "carders" or "dumpster divers."  In fact, this "low tech" method is more common than the use of sophisticated electronic wizardry to obtain the information.  *See, e.g.*, Robin Sidel, "Identity Theft – Unplugged – Despite the High-Tech Threat, When You Get Ripped Off It's Usually Still the Old Way," <u>Wall Street Journal</u>, Oct. 5, 2006, p. B1.

6.      Also, Michael D. Cunningham, Senior Vice President of Credit and Fraud Operations for Chase Cardmember Services testified at a Congressional hearing before the Senate Banking Committee in 2003 that 96 percent of the total fraud cases his company encountered occurred when a card "account number and expiration date is compromised[,] permitting purchases by phone, mail or Internet."  Senate Hrg. 108-579, 6/19/03, Sen. Comm. on Banking, Hsing., and Urb. Aff.

7.      The expiration date is generally necessary for misuse of the card number.

8.      It is possible for sophisticated identity thieves to replicate a credit card number using the expiration date and the last four digits of the card number using a computer with sophisticated algorithms.

9.      Expiration dates combined with the last four or five digits of an account number can be used to bolster the credibility of a criminal who is making pretext calls to a card holder in

order to learn other personal and confidential financial information.

10.     Merchants, including this Defendant, generally will not honor a credit or debit card in a card-not-present transaction (telephone, Internet, or fax) without both the correct expiration date and the card number.  Thieves prefer to engage in such transactions to commit card fraud, so as to reduce the chances of apprehension.

11.     To curb this means of identity theft, Congress prohibited merchants who accept credit cards and debit cards from issuing electronically-generated receipts that display the expiration date of the card.

12.     FACTA was enacted on December 4, 2003.  FACTA, part of FCRA, 15 U.S.C. §§ 1681, *et seq.*, gave merchants who accept credit or debit cards up to three years to comply with the truncation requirements.   15 U.S.C. §§ 1681c(g)(3)(A)-(B).   FACTA required full compliance with its provisions no later than December 4, 2006 for all machines in use and in all transactions.  15 U.S.C. § 1681c(g)(3)(A).

13.     On June 3, 2008, Congress enacted the Credit and Debit Card Receipt Clarification Act of 2007 ("Clarification Act").  The Clarification Act amended FCRA "to make technical corrections to the definition of willful noncompliance with respect to violations involving the printing of an expiration date on certain credit and debit card receipts before the date of the enactment of this Act."  122 Stat. 1565 (June 3, 2008).

14.     The Clarification Act amended FCRA (15 U.S.C. § 1681n) by adding the following new subsection:

> (d) CLARIFICATION OF WILLFUL NONCOMPLIANCE.--For the purposes of this section, any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and the date of the enactment of this subsection [June 3, 2008] but otherwise complied with the requirements of section 605(g) for such receipt shall not be in willful noncompliance with section 605(g) by reason of printing such

expiration date on the receipt.

15.     Defendant has willfully violated FACTA and failed to protect Plaintiff (and others similarly situated) against identity theft and credit card and debit card fraud by failing to comply with the truncation requirement (*i.e.,* continuing to print the expiration dates of the debit and credit cardholders transacting business with Defendant) after June 3, 2008.

16.     By printing their protected, private information on receipts, Defendant invaded the privacy of Plaintiff and the other class members.

17.     Plaintiff brings this action against Defendant based on Defendant's violation of 15 U.S.C. §§ 1681p, *et seq.*  Plaintiff seeks statutory damages, attorneys' fees, costs, and such other relief as the Court deems proper.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction under 15 U.S.C. §1681p (FCRA) ("Actions to enforce liability … may be brought … in any … court of competent jurisdiction….").  This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

19.     Venue is proper in this court because Defendant does business in Minneapolis, Minnesota.

## PARTIES

20.     Plaintiff, ROSS GOOD, resides in Lake County, Illinois.

21.     Defendant, U. S. BANK, NATIONAL ASSOCIATION is a nationally chartered bank which does business in Minneapolis, Minnesota.

22.     Defendant is a "person that accepts credit cards or debit cards for the transaction of business" within the meaning of FACTA.

4

## FACTS

23.     On November 24, 2009, – after the truncation requirement became effective – Plaintiff received at his e-mail account a computer-generated receipt which displayed the expiration date of the Plaintiff's credit card in response to his internet purchase through a transaction he made with Defendant.

## CLASS ALLEGATIONS

24.     Plaintiff brings this action on behalf of a class pursuant to Federal Rule Civil Procedure 23.

25.     The class includes all persons to whom Defendant provided an electronically printed receipt at the point of transaction after June 3, 2008 which receipt displayed the expiration date of the cardholder's credit card or debit card number.  Excluded from the Class are Defendant's officers and directors, Plaintiff's counsel, and any Judge or Justice presiding over this action.

26.     The class is so numerous that joinder of all individual members in one action would be impracticable.

27.     There are over 39 other persons to whom Defendant provided electronically printed receipts at the point of transaction after June 3, 2008, which displayed the expiration date of the cardholder's credit card or debit card number.

28.     There are common questions of law or fact affecting all members of the class, which predominate over questions that may affect individual members.  These include the following:

     a.  Whether Defendant issued transaction receipts failing to comply with FACTA's expiration date truncation requirement after June 3, 2008;

b.   Whether Defendant had a practice of providing customers with transaction receipts that failed to comply with the expiration date truncation requirement after June 3, 2008;

c.   Whether Defendant thereby violated FACTA; and

d.   Whether Defendant's conduct was knowing.

29.   Plaintiff will fairly and adequately represent the class members. Plaintiff has no interests that are adverse to or that conflict with the interests of the class members. Plaintiff has retained experienced counsel.

30.   A class action is an appropriate method for the fair and efficient resolution of this controversy. Individual actions are economically infeasible and impractical.

## VIOLATION ALLEGED

31.   Defendant violated 15 U.S.C. §1681c(g)(1), which provides in relevant part: "No person that accepts credit cards or debit cards for the transaction of business shall print … the expiration date upon any receipt provided to the cardholder at the point of sale or transaction."

32.   Defendant accepts credit cards or debit cards in the course of transacting business with persons such as Plaintiff and the class members. In transacting such business, Defendant uses cash registers or other machines or devices that electronically print receipts for credit card or debit card transactions.

33.   After June 3, 2008, Defendant, at the point of transaction, provided Plaintiff and each class member with one or more electronically printed receipts, with respect to each of which Defendant failed to comply with the truncation requirement.

34.   FACTA was enacted in 2003 and gave merchants who accept credit cards or debit cards several years to comply with its requirements.

35.     The Clarification Act was enacted on June 3, 2008.

36.     Defendant knew or should have known of the truncation requirement, especially by June 3, 2008.

37.     FACTA's requirements were widely disseminated to merchants, including Defendant, by Visa, Inc. and MasterCard Worldwide, operators of the worldwide electronic payments networks; the Payment Card Industry Security Standards Council, an independent council originally formed by American Express, Discover Financial Services, JCB, MasterCard Worldwide and Visa International on September 7, 2006 with the objective of managing the ongoing evolution of the Payment Card Industry Data Security Standard; and merchant services companies that sell point-of-sale equipment to merchants for the processing of credit and debit card payments.  These organizations notified merchants, including Defendant, that FACTA prohibits the printing of more than the last five digits of the credit or debit card number and prohibits the printing of the expiration date associated with the credit or debit card account, and that they are required to comply with FACTA.  In fact, the requirements of FACTA were widely publicized among all merchants who accept credit or debit cards.

38.     In addition, VISA and MasterCard are so determined to curb identify theft in connection with the use of credit and debit cards at the point of sale that both companies impose in their agreements with their merchants, including Defendant, the following penalties for failing to truncate credit card information:

| | |
|---|---|
| 1st Violation - | $   5,000.00 |
| 2nd Violation - | $ 10,000.00 |
| 3rd Violation - | $ 25,000.00 |
| 4th Violation - | $ 50,000.00 |
| Willful or Egregious Violation - | $ 500,000/month |

39.     Likewise, in response to earlier state legislation enacting similar truncation

requirements, on March 6, 2003 the CEO of Visa USA, Carl Pascarella, explained: "Today I am proud to announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. The card's expiration date will be eliminated from receipts altogether . . . . The first phase of this new policy goes into effect July 1, 2003 for all new terminals . . . ." "Visa USA Announces Account Truncation Initiative to Protect Consumers from ID Theft; Visa CEO Announces New Initiative at Press Conference With Sen. Dianne Feinstein," PR Newswire, March 6, 2003.

40.     Within 24 hours, MasterCard and American Express announced they were imposing similar requirements.

41.     The card-issuing organizations proceeded to require compliance with FACTA by contract, in advance of FACTA's mandatory compliance date.

42.     For example, the August 12, 2006 edition of "Rules for Visa Merchants" (p. 62), which is distributed to and binding upon all merchants that accept Visa cards, including Defendant, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all." These statements were accompanied by a picture of a receipt showing precisely what had to be removed. Visa required complete compliance by July 1, 2006, five months ahead of the statutory deadline.

43.     Defendant accepts Visa cards and is a party to a contract requiring compliance with the above requirement.

44.     Despite having direct notice of the requirements of FACTA, Defendant chose to ignore such written notices and warnings, disregarded the provisions of FACTA, and continued

to provide to Plaintiff, and other patrons similarly situated, electronically printed receipts that contained the expiration date of the credit or debit accounts, in violation of FACTA.

45.     Defendant continued to provide such prohibited receipts well after the date of FACTA became effective.

46.     The foregoing acts and omissions of Defendant, despite first having actual and constructive notice of FACTA's requirements, constitute willful violations of FACTA and thereby exposed Plaintiff and other patrons similarly situated to identity theft and the credit/debit fraud that FACTA was specifically enacted to prevent.

47.     Defendant's violations, as described herein, were not isolated incidents or accidental oversights.  Defendant chose to ignore the new account concealment requirements on electronically printed receipts at the point of sale because Defendant did not wish to incur the additional expense of reprogramming or upgrading its point-of-sale equipment.

48.     The FTC has issued a rule governing interpretation of the statute, which states:

> According to the federal Fair and Accurate Credit Transaction Act (FACTA), the electronically printed credit and debit card receipts you give your customers must shorten – or truncate – the account information .… For example, a receipt that truncates the credit card number and deletes the expiration date could look like this:
>
> ACCT: ***********12345

See Bureau of Consumer Protection, Federal Trade Commission, *Slip Showing? Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts* (May 2007).

49.     The cost of truncating credit and debit account numbers including the expiration date is minimal.

50.     Most of Defendant's business peers and competitors readily brought their credit and debit card receipt printing processes into compliance with FACTA by programming their

card machines and devices to comply with the truncation requirement.  Defendant could have readily done the same.

51.     FACTA creates a statutory right of privacy.

52.     Defendant made known to its employees and possibly others Plaintiff's private card information violating Plaintiff's statutory right of privacy.  By publishing Plaintiff's private credit card information to Defendant's staff and others, Defendant violated Plaintiff's right of privacy.  Defendant similarly violated the privacy rights of other class members.

53.     Defendant recklessly disregarded FACTA's requirements and continued to use cash registers or other machines or devices that print receipts in violation of FACTA.

54.     Therefore, Defendant is liable to Plaintiff and the other class members for, among other things, "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(A).

WHEREFORE, Plaintiff, ROSS GOOD, requests that the Court enter judgment in favor of Plaintiff and the class members and against Defendant, U. S. BANK, NATIONAL ASSOCIATION, as follows:

a.      Certifying the plaintiff class, appoint Plaintiff as the representative of the class and appointing Plaintiff's counsel as counsel for the class;

b.      for statutory damages of $100 to $1000 per violation;

c.      For attorney's fees, litigation expenses and costs;

d.      For such other and further relief as the Court may deem proper, including punitive damages.

REINHARDT WENDORF & BLANCHFIELD

___*s/Brant D. Penney*_____
BRANT D. PENNEY, (#0316878)
E-1250 First National Bank Building
332 Minnesota Street
St. Paul, MN  55101
Telephone:  (651) 287-2100
Fax:  (651) 287-2103

BRIAN J. WANCA
JONATHAN E. IRWIN
ANDERSON + WANCA
3701 Algonquin Road, #760
Rolling Meadows, IL 60008
Telephone:  (847) 368-1500
Fax:  (847) 368-1501

PHILLIP A. BOCK
BOCK & HATCH, LLC
134 North LaSalle Street, #1000
Chicago, IL  60602
Telephone:  (312) 658-5500
Fax:  (312) 658-5555